# Richmond.

STUART AND OTHERS v. COMMONWEALTH.

MARCH 14, 1895.

1. TREASURER'S BOND—*Record*—*Plea of non est factum.*—The qualification of a county treasurer, including the execution of his bond, is made a matter of record in the County Court, and imports such absolute verity that in an action on said bond the plea of *non est factum* cannot be pleaded by the obligors.   Where the record appears to be regular and complete, it can only be assailed, if at all, on the ground of fraud, which must be distinctly charged and clearly proved.   *Vaughan* v. *Commonwealth*, 17 Gratt. 386 ; *Calwell* v. *Commonwealth*, 17 Gratt. 391, approved.

2. TREASURER'S BOND—*County Court Judge*—*Attorney in fact.*—The judge of a County Court cannot act as attorney in fact of an obligor to sign his name to a bond which is to be given before and approved by said court, and the fact that, at the time the power of attorney was given, the obligor knew that the attorney was such judge, is immaterial.

3. POWER OF ATTORNEY—*Construction.*—A power of attorney to sign a bond as surety for a public officer is to be strictly construed.   The attorney can do nothing except what he is expressly authorized by the instrument to do, and when he has once exercised the power he cannot thereafter consent to material alterations in the bond.

Error to a judgment of the Circuit Court of the city of Richmond, rendered April 17, 1894, in a proceeding by motion wherein the Commonwealth was the plaintiff, and the plaintiffs in error the defendants.

*Reversed.*

This was a motion before the Circuit Court of the city of Richmond by the Commonwealth against F. C. S. Hunter, treasurer of King George county, and R. H. Stuart and others, sureties on his official bond as such treasurer, to recover a judgment for $3,119.42, with interest.

On the trial of this motion the defendants, severally, filed a number of special pleas, all of which were rejected by the Circuit Court. This court holds that the following special plea by the defendant, R. H. Stuart, marked Y, should have been received:

"The said defendant comes by his attorneys and craves *oyer* of said supposed writing obligatory, with the condition therein, and they are read to him in these words: \* \* \*

"Which, being read and heard, the said defendant says there is not any legal record as to this defendant, of the said supposed official bond of F. C. S. Hunter, as treasurer of King George county, Va. (in said notice for a motion mentioned), in the County Court of said county, in manner and form as the said Commonwealth of Virginia hath above in her said notice for a motion alleged, because this defendant says the said C. H. Ashton, who acted in the County Court as his attorney in fact, and then and there executed and acknowledged the supposed official bond of F. C. S. Hunter as treasurer of King George county at the September term, 1888, of the said County Court of King George county, was then and there the judge of said court, presiding at said term, and did and performed all these acts before himself as judge, and as judge also ratified and approved his own action, and passed upon the sufficiency of said supposed bond.

And this the defendant is ready to verify."

Sworn to.

The bond in suit bears date September 6, 1888, and was acknowledged and received September 7, 1888. Afterwards, it was discovered that there was an omission in the condition of the bond. No new bond was written, but the omission in the old bond was supplied and the bond was re-acknowledged by all the obligors but two and accepted by the court November 1, 1888. The parties who did not re-acknowledge were not made parties to the motion.

The other facts sufficiently appear in the opinion of the court.

*R. J. Washington,* and *J. E. Mason,* for the plaintiffs in error.

*Attorney General R. Taylor Scott,* for the Commonwealth.

KEITH, P., delivered the opinion of the court.

The Commonwealth of Virginia, through her Attorney General, served a notice in the Circuit Court of the city of Richmond upon F. C. S. Hunter, treasurer of King George county, and George Turner, R. H. Stuart, Henry H. Hunter, and F. W. Payne, that on June 25, 1892, judgment would be asked for against them for the sum of $3,119.42, with interest.

The parties defendant appeared by counsel, and tendered twenty-one special pleas, all of which the court rejected. These pleas may be grouped: (1) Varying forms of the plea of *non est factum;* (2) pleas which may be treated as averring fraud in the transaction upon which the supposed liability of the defendants rests; and (3) a plea averring that R. H. Stuart had constituted C. H. Ashton his attorney in fact to sign his name as one of the sureties upon the treasurer's bond; that C. H. Ashton was judge of the County Court of King George; that as such judge he presided in the court before which the bond was executed, and in which the treasurer qualified; and that he had acted on the occasion of the execution of the bond and the qualification of the treasurer in the dual capacity of attorney in fact for one of the parties, and as judge of the court.

The contention of the Attorney General, representing the Commonwealth, is that the qualification of the treasurer, in-

cluding the execution of his bond, is, by virtue of section 812 of the Code of 1887, made matter of record in the County Court, and that this record and memorial of the judge imports "such uncontrollable credit and verity as that they admit of no averment, plea, or proof to the contrary;" and in support of this proposition cites a number of cases, among them *Vaughan* v. *Commonwealth*, 17 Gratt. 386, and *Calwell* v. *Commonwealth*, Id. 391.

This presents a point which was left undisposed of by this court in the recent case of *Blanton* v. *Commonwealth* (*ante*, p. 1), the court in that case not finding it necessary to pass upon it. We are of opinion, however, that this contention of the Commonwealth is sustained by the decisions just cited, and by the statute law. See section 812, Code of Virginia, 1887. Being a record, it follows that *non est factum* cannot be pleaded; the only plea putting a record in issue being that of *nul tiel record*, which is tried by the production of the record itself. Where the record appears to be regular and complete, it must be assailed, if at all, upon the ground of fraud; and the fraud relied on must be clearly and distinctly charged, and established by satisfactory proof. We are, therefore, of opinion, that the Circuit Court did not err in rejecting the various pleas of *non est factum* offered by the several defendants.

The case arose out of the following state of facts: F. C. S. Hunter had qualified as treasurer of King George county, and one of the sureties upon his official bond, E. J. Smith, having moved for counter security, the court directed Hunter to execute a new bond, or have his power as treasurer revoked. Thereupon Hunter, with George Turner, F. W. Payne, H. H. Hunter, E. L. Hunter, W. A. Rose, and R. H. Stuart, by C. H. Ashton, his attorney in fact, acting under a power of attorney under the hand and seal of Stuart, entered into and acknowledged a bond in the penalty of $22,000, conditioned

according to law. It seems that the bond thus executed omitted to provide that any default of which the treasurer might be guilty, or any money for which he might become responsible upon the said bond, was to be paid in lawful money of the United States, as directed by statute, and not in coupons; and, the matter having been brought to the attention of the court by its commissioner of accounts, the treasurer, and George Turner, R. H. Stuart, by C. H. Ashton, his attorney in fact, Henry Hunter and F. W. Payne, appeared in court at the November term, 1888, of the County Court of King George, and reacknowledged the said bond in due form of law as their act and deed.

Comparing the order entered at the November term, 1888, with that entered at the September term, 1888, it appears that the bond was not reackowledged by two of the obligors named therein, William A. Rose and E. L. Hunter. The power of attorney under which C. H. Ashton acted is not in the printed record, nor does it appear in the original record brought to this court from the county of King George in obedience to the *subpœna duces tecum* heretofore issued. It is to be presumed that it was a naked power of attorney, authorizing C. H. Ashton to sign the name of R. H. Stuart to the bond of F. C. S. Hunter as treasurer of King George county. It may also fairly be presumed that, as is usual in such cases, the bond had been made up before the term of the court at which it was to be executed; that the sureties knew with whom their responsibility was to be shared; and that they consented to the bond as parties to a bond which contained the names of those who, when the bond came to be executed, in point of fact signed it. In other words, that R. H. Stuart, in constituting C. H. Ashton his attorney in fact, contemplated assuming a liability which was to be shared with F. W. Payne, George Turner, H. H. Hunter, W. A. Rose, and E. L. Hunter. It nowhere appears that Stuart had any knowledge of what

took place at the November term of the County Court, or that he knew, or had any means of knowing, that two of the names which appeared upon the bond as executed at the September term had been stricken from it, and the number of the sureties reduced from six to four.

Now, these facts place Judge Ashton in a position which it was impossible for him with propriety to occupy. We do not for a moment suppose that he was guilty of any intentional wrong, or that he would, under any circumstances, purposely do anything unbecoming a judicial officer, but we conceive it to be necessary that the administration of justice shall be free from the slightest appearance or suspicion of impropriety, and we can but think that, to act as attorney in fact with respect to a transaction pending before his own court, in which he was called upon to pass judicially upon the sufficiency of his own credentials as attorney, and to execute an instrument by virtue of his position as attorney which he was then to establish as a memorial and a record importing absolute verity as to all parties concerned, in his capacity as judge, was the attempt upon his part to discharge functions absolutely antagonistic and wholly irreconcilable. It is not enough that in the particular transaction there is no suggestion, and can be none, of any improper motive or act. We cannot sanction a practice which could by possibility be drawn into a percedent, and which might or could render the judiciary of the State the objects of suspicion and of criticism, and tend to impair public confidence in their utter and complete personal disassociation from the subject-matter of their official action. Not only was he called upon as judge to pass upon his authority to act at the September term, when he accepted the original bond with six names upon it—which is presumably the only bond his principal had ever contemplated signing—but, continuing to act upon the authority of that power, he appears before himself at the November term, and

reacknowledges that bond, and thus increases the liability of his principal, without his knowledge or consent, interpreting as judge his power as attorney, greatly to the injury and disadvantage of his principal. The whole force and effect of this record rests upon what was done at that November term. Strike that out, and the case of the Commonwealth falls with it. There is no suggestion of more than one power of attorney, and that a naked power to sign a name to a bond already agreed upon by the parties; and there is no intimation that Stuart had the slightest suspicion, or reason to suspect, that anything was to be done at the November term altering his liability, or in any way affecting his interest. It seems to be just here that the Commonwealth is in a dilemma. If Judge Ashton was acting in a merely *ministerial* capacity, as is contended by the defendants, then the plea of *non est factum* could be made to the bond; if acting in a *judicial* capacity, his action would be obnoxious to the objection just pointed out. It is not a question as to who may be an agent or attorney in fact. Without doubt Judge Ashton was under no disqualification to act as agent for the defendant, but, having accepted the agency, he was thereby rendered incompetent to act as judge. Having accepted that agency, was he competent to sit in judgment upon the sufficiency of his credentials as agent, and upon the extent and scope of the powers with which he had been clothed as agent? We think he could not, and we do not doubt that, though this ruling may eventuate in the loss of this debt to the Commonwealth, it is far better that such a loss should be suffered than that any of the rules and principles established in order to secure absolute purity in the administration of justice should suffer any impairment.

The Attorney General contends that Stuart knew that C. H. Ashton was judge of the County Court of King George, and is, therefore, to be considered as having waived his objec-

tion to him on that account.    The answer seems to be two-fold:

*First.* There is no such express or implied waiver to be in-ferred from the circumstances.    Stuart had, on the contrary, every reason to expect that the action of his attorney would conform to all the requirements of the law, and transcend it in no particular.    The waiver or estoppel claimed by the Com-monwealth must rest upon the idea that Stuart selected his agent knowing that he was judge of the County Court, and, as such, charged by law with the duty of presiding in the court before which the treasurer would give bond and qualify; and must, therefore, be held to have assented in advance to his acting in the dual capacity of agent and judge.    Grant this to be true, for the sake of argument, can it be held to extend beyond the act of signing the bond at the September term of the court, when a bond with six sureties was executed, received, and accepted by the Commonwealth?    Can it be that a naked power of attorney to perform a single act could be construed as creating a continuing agency, by which the agent could assent to the most material alteration in the in-strument as theretofore executed by him, reducing the number of sureties from six to four, and by his reacknowledgment bind his principal without his knowledge or consent to the instrument in its changed condition?    Such a power as we are considering is to be strictly construed.    The agent can do nothing which he is not expressly authorized to do by the instrument which is the exclusive source of his authority to act at all.    If this be true in every case, even though the con-stituent who creates the agency may be the beneficial party to the transaction with respect to which he is to become bound, how much more strictness should be observed by an agent acting for one who is to be bound as surety only, and who is to reap no profit or advantage from the obligation which he assumes.    As the occasion then demanded the utmost strictness in the exercise of the power conferred by

Stuart, and as he could not, by possibility, have contemplated, when he gave the power of attorney in August, that the bond which he authorized his agent to sign in September would be materially altered and reacknowledged in November, he cannot be deemed to have conferred the authority upon his agent to make such reacknowledgment or alteration, or be held to have waived, or to be estopped from making any lawful objection thereto. Therefore, to repeat myself on this point, even though the waiver or estoppel might apply to the execution of the bond in September, on the ground that he must have contemplated what then occurred (which I by no means admit), it does not apply to what took place in November, for nothing short of prophetic vision could have enabled Stuart to foresee the situation which then existed. Without knowledge, there can in this case be no waiver or estoppel; and in this instance knowledge was impossible.

*Second.* We do not place our decision wholly or chiefly upon any ground of objection which the parties could have waived, but rest it broadly and firmly upon the proposition that it would be contrary to public policy to sanction what we have here condemned.

In conclusion, we are of opinion that the Circuit Court did not err in rejecting the several pleas of *non est factum.*

As to the pleas in which it is averred that a fraud was practiced on the defendants, we are of opinion that, should the defendants at any future trial rely upon that defense, it can be better presented in more carefully prepared pleas.

And, *lastly*, we are of opinion that the plea of R. H. Stuart, marked "Y," should have been admitted.

The case must therefore be reversed, and remanded for a new trial with leave to the defendants, or any of them, to file such additional pleas as may be consistent with the views herein expressed.

REVERSED.